Oh, I'm sorry, that's right. We have a motion. I forgot. Sorry. We have a motion, and I'm going to defer to my colleague on the right, Judge Clevenger, to enter the motion before the panel. This is my motion. I move the admission to the Bar of this Court of Elizabeth Moulton, who is standing before us. She's a member of the Bar of the State of California. I'm satisfied that she possesses the skills and character required for admission to the Bar of this Court. I have personal reason to attest to her qualifications. She has served this Court and my chambers as my law clerk superbly in this past year. I request that the Court act favorably on the motion. Judge Toronto, do you have any objections? No objections. And I think the motion shall be granted. Welcome to the Bar of the Court. Can you step over and be sworn in? Please raise your right hand. Do you solemnly swear or affirm that you support yourself as an attorney and counsel of this Court uprightly and according to law, and that you support the Constitution of the United States of America, and the representative of the United States before the people of California, sir? Thank you. Welcome. All right. Now, some really important business being done. Let's move on. The first case before the Court. Equally important. Lowe versus Ray. Now, I understand that we're going to split argument. Is that correct? Yes. Okay. So 10 and 5? Okay. And Mr. Rowland, do you want to reserve 7 minutes for rebuttal? Yes, Your Honor. Okay. All right. It's docket number 13-1048. You may begin. Thank you, Your Honor. Before we get started, I would like to note, I do have my client, Mr. Kim Lobby, with me here, just so you're aware of who's at the counsel table with me. In this case, there's really two issues on appeal. First, is there support for the proposed amendments to Claims 1 and 3 in the specification? And second, I deal with prior art rejection under either 102 or 103 for anticipation or obviousness. I think the support and proposed amendments is covered pretty well in the briefs, so I'd like to start with the second point initially, and then we can come back to the first one if we have time. Obviously, if the Court prefers some other orders. What's the nature of your objection to the Board's written description of this issue? I don't have trouble getting my hands around it, and I assume that what you were saying is that what the test that the Board was applying here was that they were requiring an anti-verba disclosure. Exactly. And that that's not the law, and that you think that we ought to remand and tell the Board to do it properly. Is that your point? Yes, Your Honor. Okay. Thank you. To the extent that we're going to enter that amendment at all, we would certainly suggest that if the claims are going to be allowed based upon the prior art and the patentability in their original form, the patentee's withdrawal of those proposed amendments should be granted. Well, if we were to sustain the 102 and 103 rejections as sustained by the Board, then Claim 3, that's all that's left. Isn't that right? Claims? The 102 and the 103 rejections don't affect Claim 3. They go to all seven claims, essentially. Although there were only five claims at issue here, it's the same rejections as to all seven claims. So, if we were to affirm on the 102 and 103, that moots the written description issue? I believe it does, yes. Let me just, I had a different understanding that the Board rejected on 102 and 103, 1, 2, 4, and 5. It rejected 1 through 3 on written description. So, if we agree with the prior rejection, that leaves 3. Are you giving away your written description? I think that's what the Board has done. As a practical matter, I think 3 falls as well. And why would you say that? I don't think there's anything added in 3 that's not also in 1 and 2. Well, it's a dependent claim. So, by definition, there's something more, correct? There is something more there. I haven't seen anything that suggests that there's anything more in 3 to make it patentable as compared to 1 or 2. But you're willing to concede that. I mean, I have the same view, sitting back and just looking, you know, through the lens. But you're saying that for purposes of this appeal, if we were to sustain the Board on the 102 and the 103, then the case is over? Yes. Thank you. In the event that we don't follow that concession, can I ask you a written description question? Assume that we agree that a Board requirement, if that's what it was, that there be an in hec verba explanation that you can combine features of the two alternative embodiments together is wrong. And we were to consider saying, here's what the right inquiry is, go make it. How do you define what you think the right inquiry is? Well, I think the inquiry is whether the features that are being added are disclosed in a manner that allows the public to know this inventor had this in his mind. He knew what he had available to him. He had it in his possession. And what's the evidence when you have a specification that says spring clip in embodiment one, sidewalls or side elements in embodiment two, what's the evidence from which somebody might conclude, or one way or the other, that the inventor had in mind combining those two features in a single support base? Well, you've got an additional claim there that has a back wall with side elements as well that are combined. And then the patent further goes on to say that that back wall may be replaced by the spring clip. So there's some combinations within this patent between a back wall and spring clip and sidewalls. What purpose would the sidewalls serve in the embodiment where there's a spring clip? It prevents the twisting. Same as it does with the back wall. Okay. All right. So let's turn to the 102-103 since that's where you want to focus. Are you really making a claim construction argument here? I mean, you're asking us to add a limitation that says there's essentially no touching. Correct? Well, certainly there's going to be a no touching issue there. But beyond that, there's a bigger issue in 102 and 103. And that is that there's none of the prior art that reflects an interaction, that close interaction between the groove notch and the upper or movable blade. When you look at the prior art, upper and lower gets interchanged depending on which way the picture was drawn. So some of the art, the upper blade is a movable blade. Some of the prior art, the upper blade is a stationary blade. So I think that causes some confusion. Maybe I'm confused because I understood your argument to be that the prior art didn't disclose an interaction between the blades where the blades don't actually touch. There's no interaction between the notch in the comb and the movable blade in the prior art. And that's what this patent is directed toward. Having that close interaction between the groove notch and the movable blade. All the other prior art has an interaction. To get at that point, do we have to have a different claim construction? I think there may be a claim construction issue there. What's happening here? What's your theory as to why it is we can get at this point that you're making about what the prior art doesn't teach? Well, I think the whole point is that the claim language itself says that there is a ... I want to say the word interaction, but interaction is not the language that's used in the claim. The construction that you proposed was groove notch for engagement with the front edge of a plurality of upper teeth of a cutting head. Yes. And you proposed that and they adopted it. The examiner adopted it. That was the original language. How is it that you think the prior art doesn't disclose that groove notch for engagement? The prior art discloses notches that engage the non-moving blade. I don't think there's any prior art that I've seen that shows a notch engaging the moving blade. Now, what we've got as a problem here, or at least an understanding problem, I think, is that we talk about the engagement with the upper blade in the patent. When you look at the 973 patent, the upper blade is the moving blade. When you start looking at some of the other prior art, because the clipper was sometimes drawn upside down or right side up, it depends upon the orientation of the clipper that was drawn, sometimes that upper blade is the stationary blade. Well, why then didn't you propose a construction that said that groove notch for engagement with a front edge of a plurality of teeth on a movable blade as opposed to the plurality of upper teeth of a cutting head? You're now saying movable is an additional limitation that you want to read into the claim. I think the upper blade is the movable blade in this patent. That's consistent within the 973 patent. When you look at upper blade in the 973 patent, that means the movable blade. You've reserved so much time that you're already into your rebuttal. Do we have more questions first? Okay. You're about at six and a half minutes. Thank you, Your Honor. Ms. Kelly? Good morning, Your Honor. May it please the Court. Do you agree with the view that the 102-103 covers every claim? There isn't a 102-103 rejection against Claim 3. I agree with this logic that Claim 3 would also be anticipated and or obvious in view of the prior art. But that particular rejection wasn't proposed by Wahl and it wasn't adopted by the examiner and it's not here before this Court. Okay. Thank you. I think Your Honors have correctly perceived that this really isn't a claim construction case. Lobby proposed the claim construction. The examiner adopted that construction. The Board agreed with that construction. Twice in Lobby's brief, he states that the Board's claim construction was correct. The complaint is that the prior art. And now to try to overcome the prior art, Lobby is asserting that there are these two limitations that are not recited in the claim and have little or no support in Lobby's specification. Would you agree that if you went through all the prior art, that none of the prior art would disclose this groove notch interaction with the movable blade of the two blades? I wouldn't. And if Your Honors would turn to Wahl at Figure 1, that's appearing in the appendix at A-166. It might actually be cleaner in the red brief. I mean larger, I guess I should say. Let me check the red brief to see if it's larger there. Figure 1, is that what you said? Yes, Figure 1 on page 166. If you look at that figure, Wahl discloses two blades. Which figure are you talking about? Figure 1. Thank you. You have a lower blade and an upper blade, identified as 13 and 14. And you have a comb notch identified as 10. And you have an apex in that comb notch identified as 33. If you go to the base of that apex, that's where the groove notch is. That V-shaped thing. Only in this case, the bottom of the V is sort of at 2 o'clock. And you'll see that both of the blades, 13 and 14, do not touch comb 10 at the apex or in the groove notch formed underneath apex 33. So that limitation, well it's not a limitation, but if we were to say that it was, Wahl discloses that alleged limitation. So that issue is off the table. The other alleged limitation is that the upper blade extends and forms an overhang past the cutting blade 13. But if you look to lobby specification, nowhere in the written description is such an overhang described. And in fact, if you look at lobby figure 12 on A25, you'll see that in fact it is the lower stationary blade that forms an overhang with the upper movable blade. So if you look to figure 11, figure 11 discloses the lower blade in figure 11, you can see 13 there, identifies that cutting T13 of the lower stationary blade. And then look down at figure 12, you'll see that lower blade 13 actually extends past the upper movable blade 14 of the cutting blade. And again that's depicted in figure 12. The lower blade that's shown in figure 11 is in figure 12? Yes. Not identified as such?  And you can see this configuration again in figure 17. So the actual, the lower stationary blade, the cutting T13 actually extends past the upper movable blade 14 and cutting T15. Figure 17? Pardon me? Yes, I see what you're saying. So as far as this alleged second limitation of this overhang, not only is it not disclosed in the figures or in the written portion of lobby specification, the opposite is disclosed. So there's no support for these alleged limitations in the specification or the drawings. They're not written into the claims. These aren't additional limitations. And if they were additional limitations, well if, for example, the movable cutting blade not touching the groove notch were a limitation, Walsh certainly meets that. Can I switch you to the other issue, the written description issue? Yes. Why isn't it evident to a skills artist in reading the specification that you can do the sidewalls and the spring cliff on the same support base without raising any additional mechanical issues that would have to be solved? Well, there's a larger doctrinal issue and then there's sort of two sub-issues. The larger doctrinal issue is it's not enough that the specification would make obvious. I didn't say obvious. I think I tried very hard to avoid using the term obvious, but it seems to me it's not uncommon for a number of features to be laid out in different embodiments and claims to say use both A and B and at least one possible dividing line. And I agree written description doctrine is less than perfectly informative, but one possible standard would be is some mechanical issue raised that would tell a skilled artisan I'm not sure the inventor here really had in mind, because it raises issues not solved, putting different features, mixing and matching them. There are the two sub-issues I was talking about. One is when you have a list of different embodiments and different parts, there has to be some sort of blaze mark, some sort of indication that the inventor was setting aside at the time of filing, not at some point later on, but at the time of filing they had the parts configured in a specific arrangement at the time of filing. We don't have that here. The second and I think more telling reason is that lobby specification specifically says you have to take one of these things off to put the other on. You have to take the back off. Pardon? You have to take the back off to put the spring clip on. No, you take the whole comb off. You can have a comb attachment that sells on with a spring clip and that's shown in lobby's well it's shown in figure 14, that's a comb attachment with a spring clip at the back, that's spring clip 35 and if you look to figure 15 you can see something with side elements and that's more it's being held into place by these side elements. And if you read the written description at column 6 at A33, it says a variation of this spring force attachment is illustrated in figures 15 through 18. In this case a back plate replaces the spring clip and side elements are added. Right, so the spring clip and the back plate are the things that are either or. I don't see this as saying that somehow spring clip is either or with the side elements. I respectfully disagree. There's no drawing where you have look, there's no dispute here that there is no affirmative express indication to use the two together. Are you saying that's always required? I am not saying that's always required. What is the mechanical issue that would make a skilled artisan say in reading this there's a problem here that I don't see the solution to in having both the spring clip and the side element. Or are you saying there isn't any? It's perfectly clear and any skilled artisan would understand that you can mix and match these pieces. The written description requires that the specification indicates to those skilled in the art what the inventor actually possessed. In so many words. It doesn't have to be in the exact words. It doesn't have to be verbatim. How is the standard that you're expressing different from in-hype verbatim? We all agree that if we had in-hype verbatim disclosure you wouldn't be here. And it seems to me that you're saying that that's the degree of specificity required to satisfy written description is in-hype verbatim disclosure. No, your honor, we are not. Then tell me exactly what short of in-hype verbatim disclosure in this case would be satisfactory? For example, there's no indication in the specification that you can have third or fourth or fifth embodiment. They said we have two variations and here they are. There's no writing. Here are any other ways to satisfy. It's one thing if the two variations though are completely incompatible. I mean, here the specification does talk about the sidewalls as preventing the sliding. Correct? Yes, your honor, but this court. Why wouldn't someone I mean, it's pretty simple and mechanical stuff here. Why wouldn't someone say well, I'm going to have a spring clip, but I also want to prevent the sliding where there's a spring clip. This court has repeatedly held that that alone is not enough. You need some sort. When you have a list of different attachments, and here our list is only of two, but there has to be some sort of indication or blaze mark to those of ordinary skill in the art that at the time you filed your application you conceived of something that had both types of fasteners or both types of elements present in the same device. And here I respectfully disagree with Judge Toronto's characterization that only the backplate is the thing that's changed. If you look at the drawings if you look at the drawings, for example, in figure 24A, the side elements are physically located on this back clip. This comb is completely different setup than the spring clip. The spring clip which is illustrated at figure 14 that clip is this fold that comes up in the back at 35. You don't see anything like that fold in figure 24, at figure 25. There's just no spring clip. It's completely differently shaped. Okay, I think we understand that but you're now past your time if you want to cede some to your colleagues. Yes, thank you. The patent owner is trying to get away with sort of a slight of hand here. During prosecution with respect to the claim construction, the patent owner urged an adoption for this inconvenient language in the claims. It says for engagement with upper teeth. And I say inconvenient because if you look at the actual specification starting I believe at column 5, line 45 through column 6 is where the comb embodiments are discussed. The majority of the patent discusses a disposable cutting head. But in that language, what they describe is a groove notch and they actually say having groove notch 34 to receive the front edge 36 of the disposable cutting head. And as Slicer has pointed out, throughout the specification of the 973 patent, the front edge of the cutting head is that lower fixed blade. There's no discussion at all in the specification about any interaction with an upper blade. What's your position on the relation of whether Claim 3 survives if the other claims go down on 102, 103? I would agree with the solicitor's position. There was no prior art rejection of Claim 3. Can I then ask you about Claim 3 in written description? I will tell you that's the only one I'm struggling with. And I'm trying to understand how to ask the question. If the words don't have to be there to say you can use the spring clip with the side elements, how is this issue supposed to be decided? I believe the proper analysis is to look at the specification of what is described and then look at that in the context of the objective person of skill in the art and whether that description tells that person that the patentee did in fact envision as the invention what is claimed. Suppose I thought that everything you just said simply restates the question and still hasn't defined what the skilled artisan is looking for. If he's not looking for the words that say or pictures that show, because if those were there we wouldn't be here on this, what is the inquiry? I guess that is... I understand that may be as far as our cases go. That may be a deficiency in the cases, so I guess I'm looking for help in trying to identify how to think coherently in a useful way about the question when the words and pictures don't show the combination, when can a patentee claim in a mix and match way two elements to features that appear in different bodies? I guess my response to that would be that we have to look objectively from the outside looking in. The applicant at the time had every right to disclose every limitation of their invention, everything that they want to link together put together to support their claims. So in looking back, I don't believe the standard is, it must be absolute language matches absolute language. What if a skilled artisan says I'm looking at this disclosure and I recognize that there isn't a drawing that shows everything all put together, but I certainly can cobble together the invention by what's been disclosed here. I'm one of ordinary skill in the art, but I think my test is could I, with what's disclosed here, can I come up with the invention? He says yes I can. I think that hindsight look, although I think the problem with that is that. That's the point that the applicant made here in response to your written description, proposed rejection that you made the examiner. It was your side, the requester here brought forth the WD issue. And at page A576 in the record, we see Laube responding and saying it'll be understood by those of skill in the art that the you got the invention. The test, I think, to answer what Judge Tirado was asking you, at least Laube was proposing that the answer to Judge Tirado's question is, would one of ordinary skill in the art, as I said, cobble together, would he quickly realize that this is the nature of the invention? And I think, again, you have to look not at  I'm not asking whether it's obvious. Maybe it is obvious, maybe it's not. The question is, could one of skill in the art very easily, by what has been disclosed here, sit down and understand that that's the invention? And the invention, I guess, is the trick there. Whether the person of ordinary skill in the art could go look at a entire list of elements and cobble together Let's assume you were on the other side of this case. What would you think needs to be disclosed that wasn't disclosed here to satisfy written description short of in high verba? What would you just take, you know, what was disclosed, add something to make this claim to satisfy written description? I'm not sure. Looking back, I could put a specific word. But you have to. I mean, that's my question. We all know that in high verba can't be the test. Something less than in high verba will satisfy written description. So I'm asking you, your creative guy, you know this field of this art very well, just tell me the one or two things that had to be disclosed to satisfy WD that weren't disclosed. In describing the embodiment of the comb, forgetting all the disposable cutting head, had the applicant said, figure 14 is an embodiment of the attachment comb. It has a spring clip. It has side elements. It has a groove notch. Those are the kind of details that the patent owner is trying to shoehorn Why does he have to say that if one upscale in the art can figure that out? Disclose every possible embodiment? I think you have to point to what your invention is and not just say, here's a soup, pick out your favorite bits. Because otherwise, you would see an influx of very long-winded applications and then an attempt to keep trying to dodge prior art by then pointing back and saying, well, I found another element over here, which now avoids prior art and give me some claims. But that was not the intention. Thinking about this ahead of time, I was thinking, well, maybe there's a standard that says something like if, again, just the pure, we have something close to a pure example of feature in Embodiment 1, other feature in Embodiment 2. The question is, can you claim though you haven't described, combining those two features? The question is, does combining those raise some non-trivial issue of how to do it? It may not be so serious that it's not obvious, but some design issue then that's not enough. Suppose for a minute, just assume with me that there's a standard like that. What would be the mechanical design issue in having a spring clip plus side elements? The way they are described in this patent, the side elements are attached to the back plate and the comb teeth, and they would not function if you attach a side element to comb teeth and a spring clip. Spring clip would no longer have the biasing effect. It would be fixed. How would the side elements not function to prevent side-to-side movement? Side-to-side movement is not discussed in the specification. I didn't think so. It simply says side elements. We are way over time, so we're going to have to stop. I'm going to give you eight minutes for rebuttal to restore some of the time you had lost and give you an extra minute to make up for some of the overflow that our questions created on the other side. Thank you, Your Honor. Let me ask you a question about this written description. Couldn't the patent simply have said that these elements just recited generally, that embodiments could have a combination of elements? Wouldn't that have been simple enough to put into the patent? It certainly could have been put in there. In fact, if you look at the closing statement in the 973 just before the claims that specifically says that it's understood by those skilled in the art, the changes in those details can be made. That's at column 6 down at 64, 65. That's in virtually every patent, right? That's in virtually every patent. It's just an acknowledgement by the patentee that you can pick up this element in this picture, this element in that and refine those if it would be reasonable to do so. That boilerplate alone can't be the answer, right? Because it's in every patent. I'm sorry? It just seems to me odd that everybody's got that boilerplate language in their patents and let's assume your technology is enormously complicated and very, very difficult to comprehend. I certainly wouldn't think that that boilerplate would help you. Your argument is if we're in simple mechanical arts where the ordinary artisan can quickly understand whether they're the kind of obstacles that Judge Toronto was talking about of putting things together and maybe you wouldn't do it. Then the boilerplate language helps you if you're in the simple field. I think it helps you more in the simple field than it would in a very complex field. For example, if you were talking about organic chemistry, a chemist may know you can substitute this atom for that atom where an average person may not know that in that particular field. Likewise, a chemist may look at it and say, okay, you can substitute potassium for sodium or whatever. Or you may not be able to do so for some specific reason in that field. In that type of a case, then a person of ordinary skill in the art would understand that that shouldn't be done. And I don't think the boilerplate necessarily helps you in that regard. But I think in this particular instance with a fairly simple mechanical device, I think it does. So the person of ordinary skill in the art would look at that and say, yeah, you can put in here a backplate with side plates or you can replace the backplate with a spring clip and both of those are clearly reflected in the specification. So why couldn't you put a spring clip with a side plate? There's no reason not to. And a person of ordinary skill in the art would understand that. And I think that boilerplate points to that. And it points to the general proposition that you're not required to put every conceivable embodiment in your patent. You've got to put your preferred embodiment in the patent. And certainly you've got to disclose enough so that a person of ordinary skill in the art would understand the problem and how to fix it. Can we move on to the 102-103 rejections since they cover so many of the claims? How do you respond to Ms. Kelly's argument that, in fact, Wahl discloses the very additional limitations that you now want us to read into your patent? In the Wahl patent, if you look at column two lines 22-25, it describes a lower stationary blade 12 and an upper normal blade 14. Column two lines 37-40 then tell us that the comb is attached by clamping onto the stationary blade 12. And then line 67-68 says it clamps onto the housing of the clipper. Okay, so again, you're not focusing as you seem to do in your brief on the no touching limitation or the overhang limitation. You're now focusing on the movable versus stationary limitation. Certainly. Because, see, what's happening here, and quite frankly, if you look at the 973 patent, Lobby's lower stationary blade does touch. That's what helps hold it on. That's what the priority is. But the claim isn't directed to how it's held on with the lower stationary blade touching. The claim is directed to the interaction between that groove notch and the upper moving blade. Did you actually make this argument before the PTAB? I believe it was made a number of times. Yes, it's an interaction between the upper moving blade and the groove notch. That distinction was drawn over and over again. Can we find that in your brief to the board? I believe it is in there. I can't point to it immediately here. Were there any rejections? I mean, there is an argument that is made that there were some rejections that you did not traverse. Do you think that there are any outstanding rejections that even if we agreed with you on everything would still be problematic for you? I don't believe so. If you agree with me on the 102, 103 rejections relating to the groove notch interacting with the upper movable blade, that's in every single claim. What about the examiner's rejection, I think it's a 633-34 that there's no support for at least one side element because the specification always talks about side elements in the plural. My understanding is, and I think when I looked at the relevant section of your brief, 633-34, you didn't traverse that. A disclosure of two is at least one. In fact, it's two. That may be a sound argument, but you didn't make it. If that wasn't addressed in that fashion, I think it was an oversight. As a practical matter, at least one by definition under this court's prior decisions means one or more, and two, it meets that limitation. But doesn't extend to the full scope of it. That's true. Anything else? I think as a practical matter, as long as you focus in on movable versus stationary blades, that takes care of the upper and lower and the orientation issues that cause confusion when you start comparing the prior art and Mr. Lobby's. Mr. Lobby's is the only one that works with that upper moving blade. Okay. Thank you. Thank you.